UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, | Case No.  1:25-cv-01283-CDB (HC) |
| Petitioner, | ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS (A-Number 245 519 793) |
| v. | |
| WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*, | (Doc. 28) |
| Respondents. | Clerk of the Court to Serve Order on Facility |

Petitioner John Doe, a federal immigration detainee proceeding under pseudonym (*see* Doc. 29), initiated this action on September 29, 2025, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Doc. 1).  Petitioner is in custody the of U.S. Immigration and Customs Enforcement ("ICE") at the Golden State Annex facility.  *Id.* ¶ 1.  On October 3, 2025, the Court issued its order setting a briefing schedule and directed Respondents to file a response to the petition.  (Doc. 5).  Respondents filed their opposition on November 17, 2025.  (Doc. 9).  On December 10, 2025, Petitioner filed a motion for extension of time to file his traverse wherein he represented he had not received a copy of Respondents' opposition.  (Doc. 10).  The Court granted Petitioner's motion.  (Doc. 12).  Over the course of the ensuing weeks, the Court entered orders attempting to gain assurance from Respondents that their opposition was served on Petitioner.  *See* (Docs. 12, 17, 19).  On January 28, 2026, the Court appointed counsel for Petitioner.  (Docs. 20, 24).

1

On February 18, 2026, Petitioner, through counsel, filed a motion to proceed under pseudonym (Doc. 26) and, on February 20, 2026, Petitioner filed a first amended petition (Doc. 28). That same day, the Court granted Petitioner's motion to proceed under pseudonym and found that, in light of the record being unclear whether Respondents had in fact effected service of their opposition and even if the date of service in Respondents' "amended certificate" (Doc. 22) was correct, Petitioner was entitled to file the first amended petition as a matter of course without leave of court. (Doc. 29). Respondents filed an opposition to the first amended petition (Doc. 30) and Petitioner filed a traverse (Doc. 32).[1]

I.      **Relevant Background**

i.      Release and Re-detainment

The relevant facts are drawn from the operative first amended petition and the parties' respective filings (*see* Docs. 9, 13, 28, 30, 32, including the declaration of Petitioner's counsel, Sarah Kate Heilbrun (Doc. 28-1 at 25) and the declaration of Alejandro Parra Jaimes, deportation officer for U.S. Department of Homeland Security ("DHS"). (Doc. 9-1).

Petitioner is a native of Chechnya and citizen of Russia. (Doc. 28 at ¶ 21; Doc. 9-2). He entered the United States on November 27, 2023, and was apprehended by U.S. Border Patrol on that same day. (Doc. 28 ¶ 22); *id.*, Ex. A. On November 29, 2023, Petitioner was released on his own recognizance pending his immigration hearing. *Id.* ¶ 23; (Doc. 9-1 ¶ 8). He was placed into removal proceedings and issued a Notice to Appear. (Doc. 9-1 ¶ 9). On January 4, 2024, DHS initiated removal proceedings with the Sacramento Immigration Court. (Doc. 28 ¶ 24); *id.*, Ex. B. While released, Petitioner attended all his required appointments with ICE and attended his scheduled hearings before the immigration court. *Id.* ¶ 25; (Doc. 28-1 at 26 ¶¶ 4-5).

On May 21, 2024, Petitioner appeared at his initial master calendar hearing and requested a continuance to seek counsel, which was granted. (Doc. 9-1 ¶ 10). On October 17, 2024, the date of the continued hearing, Petitioner requested a continuance to file any applications for relief from

---

[1] On April 20, 2026, following all parties' expression of consent to the jurisdiction of a U.S. magistrate judge for all purposes, including for trial and entry of judgment, pursuant to 28 U.S.C. 636(c)(1), this action was reassigned to the undersigned as the presiding judge. *See* (Doc. 36).

removal.  ICE detained Petitioner after the calendar hearing; no hearing before a neutral arbiter was provided prior to Petitioner's re-detention.  *Id.* ¶ 11; (Doc. 28 ¶ 26).  On November 4, 2024, at Petitioner's first detained calendar hearing, he requested a continuance to seek counsel and file applications for relief from removal.  His request was granted.  (Doc. 9-1 ¶ 12).  On November 20, 2024, Petitioner filed an application for asylum, withholding of removal, and relief under the Convention Against Torture, based on past persecution by Chechen security officials due to his political views; no calendar hearing has been set on the asylum application.  (Doc. 28 ¶ 27).

On December 1, 2025 (possibly, 2024), pro bono counsel entered an appearance before the immigration court on behalf of Petitioner.  *Id.* ¶ 28.  On December 30, 2024, the date of the continued calendar hearing, Petitioner asked to schedule his individual merits hearing; DHS asked to schedule another calendar hearing for Petitioner to plead to the allegations and charge in the Notice to Appear.  The immigration judge agreed to DHS's request.  (Doc. 9-1 ¶ 13).  On January 8, 2025, the immigration judge sustained the removal charges with Russia as the country of removal, and scheduled the merits hearing for February 27, 2025.  *Id.* ¶ 16.  On February 20, 2025, Petitioner filed a bond redetermination request and, on February 27, 2025, the immigration judge denied Petitioner's request for bond, finding he had not met his burden to demonstrate that he was not a flight risk; Petitioner also asked for and was granted a continuance so the immigration court could receive evidence that was mailed to it.  *Id.* ¶¶ 17-18.

On March 26, 2025, the immigration court advanced the merits hearing from April 24 to April 15, 2025.  On April 15, 2025, the immigration judge granted Petitioner another continuance because the evidence he had attempted to submit was rejected by the court for lack of proof of service; the merits hearing was rescheduled to May 14, 2025.  *Id.* ¶¶ 19-20.  On May 14, 2025, the immigration judge continued the hearing due to incomplete background checks and to allow Petitioner to file evidence regarding his criminal history in the United States.  *Id.* ¶ 21.  On June 27, 2025, the immigration judge continued the hearing for lack of a Chechen interpreter, upon being informed that Chechen was Petitioner's best language, not Russian.  *Id.* ¶ 22.

On July 22, 2025, Petitioner filed a second request for bond hearing and submitted evidence in support, including a letter from a sponsor as well as financial documents showing the sponsor's

residency in Sacramento and the sponsor's sufficiency of income. (Doc. 28 ¶ 30). The immigration judge denied bond. *Id.*; (Doc. 9-1 ¶ 23). On August 7, 2025, the immigration judge continued Petitioner' case due to lack of available Chechen interpreters; Petitioner did not attend due to being held in isolation. (Doc. 9-1 ¶ 24). On September 15, 2025, the immigration judge held a calendar hearing and continued the case to October 3, 2025, to allow for DHS to submit supplemental documents, including medical and disciplinary records. *Id.* ¶ 25. On October 3, 2025, during the calendar hearing, the immigration judge scheduled the merits hearing for December 3, 2025, and found Petitioner competent. *Id.* ¶ 26.

ii.   <u>Relevant Exhibits</u>

Respondents' attach to their opposition to the initial petition a form I-213 Record of Deportable/Inadmissible Alien, dated October 17, 2024, that details the circumstances of Petitioner's re-detainment. (Doc. 9-2 at 18). Under "Previous Criminal History," the form states that no crimes were "selected for inclusion on the I-213." *Id.* at 19. In a different section of the form, titled "Criminal History," two arrests are noted: on August 3, 2024, for misdemeanor shoplifting (with charges pending), and on October 9, 2024, for felony use of access account information without consent (with charges pending) and misdemeanor possession of a narcotic controlled substance (with charges pending). *Id.* at 20. Additionally, no discussion of criminal history or other circumstances regarding flight risk or danger to community is included in the "Justification Narrative" section of the form, which provides only that "targeting of [Petitioner] is an appropriate allocation of resources as [Petitioner] entered the United States without inspection on November 27, 2023, at Tecate, California." *Id.* at 19. Nor is there any related discussion in the sections titled "Method of Location/Apprehension" (stating only that Petitioner was informed that he was "going to be arrested for immigration violations") or "Alienage and Removability." *Id.* at 19-20.

The order of the immigration judge denying Petitioner's bond, dated February 27, 2025, states only that "Respondent has not met his burden to demonstrate that he is not a flight risk" (Doc. 9-2 at 23; Doc. 28-1, Ex. C) without any discussion or reasoning by the immigration judge. In his order denying Petitioner's second request for bond, dated July 30, 2025, the immigration

4

judge states Petitioner's earlier bond request was denied "based on flight risk during a custody redetermination proceeding on 02/27/2025. [Petitioner] has not established materially changed circumstances." (Doc. 9-2 at 54; Doc. 28-1, Ex. E).  The order also states that the immigration court "takes administrative notice of the Department's filing of Forms I-213, Report of Deportable/Inadmissible Alien, which the Court previously admitted into the evidentiary record during Respondent's prior custody redetermination hearing on or about 02/27/2025."  The order states that the form reflects "Respondent was encountered by border patrol agents at or near the southern border on or about 11/27/2023, taken into custody pursuant to a warrantless arrest, released [on] discretion, and then re-detained …"  The order concludes that, "the Court does not have jurisdiction over [Petitioner's] request for custody determination.  See Matter of Q. Li." (Doc. 9-2 at 54; Doc. 28-1 at 20).

iii.   Criminal History

Petitioner was named in misdemeanor complaints filed against him in Los Angeles Superior Court on December 2, 2024, and June 11, 2025.  The earlier of the two complaints charged misdemeanor violations of California Health & Safety Code 11350(a) occurring on October 9, 2024.  On November 26, 2025, the case was dismissed.  (Doc. 28 ¶ 31); *id.*, Ex. F.  The latter complaint charged violations of California Penal Code § 484(a) / 490.2(a) occurring on or about August 3, 2024.  Petitioner is represented in this matter by a public defender; as of the date of Petitioner's first amended petition, the next hearing in that matter was scheduled for March 5, 2026.  *Id.* ¶ 32.  Petitioner asserts that these charges were not identified by immigration authorities as reasons for Petitioner's detention on October 17, 2024, nor did the immigration judge hold that they were a basis for denial of bond.  *Id.* ¶ 33.

According to a copy of Petitioner's rap sheet proffered by Respondents, the August 3, 2024, incident is recorded as misdemeanor shoplifting.  (Doc. 9-2 at 11, 15).  The October 9, 2024, incident is recorded as misdemeanor possession of a narcotic controlled substance and felony use of access account information without authorization.  *Id.*

iv.   Additional Information

Petitioner asserts that he has not received any medical treatment while in Respondents'

5

custody other than pain medication regarding severe pain in his mouth from swollen gums and an inflamed tooth, impacting his ability to eat or drink. (Doc. 28-1 ¶ 6). He asserts that he was recently prescribed Prozac for his severe depression and is taking two other medications, the names of which he is uncertain of, to treat insomnia and anxiety. He states he is not sleeping well and is in state of deep depression. *Id.* ¶ 7.

The Court also takes judicial notice that Petitioner has been in removal proceedings since January 10, 2024, and has an upcoming hearing on June 1, 2026.[2]

## II.    Governing Authority

### A.    The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

### B.    Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225. Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal.

---

[2] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Apr. 16, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

Sept 12, 2025), which the undersigned adopts herein:

### 1. Full Removal Proceedings and Discretionary Detention (§ 1226)

The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

### 2. Expedited Removal and Mandatory Detention (§ 1225)

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C.

7

§ 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply

8

expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.    The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible

for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

### C.    Parole Revocation

In *Y-Z-H-L v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025), the court explained the parole process in immigration cases and noted that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision.  The court held:

Section 1182 . . . has a subsection titled "Temporary admission of nonimmigrants," which allows noncitizens, even those in required detention, to be "paroled" into the United States. This provision, at issue in this case, states:

The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this

10

> title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and **when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.**

8 U.S.C. § 1182(d)(5)(A).

*Id.* at 1133 (emphasis added). *Y-Z-H-L* determined that under the Administrative Procedure Act, immigration parolees are entitled to determinations related to their parole revocations that are not arbitrary, capricious or an abuse of discretion. *Id*. at 1146-47. An agency acts arbitrarily and capriciously by failing to make a reasoned determination or where the agency fails to "articulate[] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id*. at 1144 (footnote and citation omitted). Parole revocations in the context of the INA must occur on a case-by-case basis and may occur "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." *Id*. at 1133 (quoting 8 C.F.R. § 212.5(e)). 8 C.F.R. § 212.5(e) requires written notice of the termination of parole except where the immigrant has departed or when the specified period of parole has expired.

Applying *Y-Z-H-L* and § 212.5(e), in *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128 (W.D.N.Y. 2025), the court found that the INA requires a case-by-case analysis as to the decision to revoke humanitarian parole:

> This Court agrees that both common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole "must attend to the reasons an individual [noncitizen] received parole." *See id*. There is no indication in the record that the government conducted any such analysis here. On the contrary, the letter Mata Velasquez received merely stated summarily that DHS had "revoked [his] parole." Docket Item 62-1 at 5. Thus, there is no indication that—as required by the statute and regulations—an official with authority made a determination specific to Mata Velasquez that either "the purpose for

which [his] parole was authorized" has been "accomplish[ed]" or that "neither humanitarian reasons nor public benefit warrants [his] continued presence...in the United States." *See* 8 C.F.R. § 212.5(e)(2)(i). As a result, DHS's revocation of Mata Velasquez's parole violated his rights under the statute and regulations. *See Y-Z-L-H*, 2025 WL 1898025, at *13.

*Id*. at 146.  And in *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), the court reached a similar conclusion relying on the Due Process Clause:

> . . . **even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody**. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

*Id.* (emphasis added).  Other courts, including this Court, have held similarly.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

## III.    Exhaustion

### A.    Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'"  *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)).  The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241."  *Castro-Cortez*, 239 F.3d at 1047 (citing *United*

*States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)).  "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'"  *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)).  "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement."  *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived."  *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

**B.    Analysis**

Petitioner asserts that exhaustion is not required, would be futile, and would result in irreparable harm due to prolonged loss of liberty.  (Doc. 28 at 8-9).  Respondents assert that Petitioner had two prior bond hearings and chose not to appeal either decision, and failed to "exhaust all legal and administrative remedies in Immigration Court" prior to filing this action. (Doc. 30 at 3, 8, 14).

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that Petitioner is subject to mandatory detention under § 1225(b).  (Doc. 30 at 1).  Additionally, the order of the immigration judge on Petitioner's second bond hearing explicitly states that the court "does not have jurisdiction over [Petitioner's] request for custody redetermination."  (Doc. 9-2 at 54; citing *Matter of Q. Li*, 29 I&N Dec. 66 (B.I.A. 2025)); *see Jennings v. Rodriguez*, 583 U.S. 281, 282 (2018) ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention."); *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022).  Further, the BIA has held that all noncitizens present within the country without admission are seeking admission

pursuant to § 1225, rendering any administrative relief futile. *See J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)).

For these reasons, the prudential exhaustion requirement for Petitioner's claim for habeas corpus relief will be waived. *See, e.g.*, *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *J.A.C.P.*, 2025 WL 3013328, at *7 n.9.

## IV.    Discussion

Petitioner asserts two causes of action in his petition, for violation of the Due Process Clause of the Fifth Amendment and for violation of the Immigration and Nationality Act. (Doc. 28 at 21-25).

As set forth below, because the undersigned finds that Respondents have violated Petitioner's constitutional rights to procedural due process, and because Petitioner's other claim seeks the same or similar relief (*i.e.*, for immediate release and to enjoin Respondents from re-detaining Petitioner unless his re-detention is justified at a custody hearing before a neutral arbiter in which the government bears the burden of proof), the undersigned forbears from addressing Petitioner's other claims.

### A.    Subject Matter Jurisdiction

First, Respondents argue that "dismissal is appropriate because there is nothing for this Court to remedy" because Petitioner has had two bond hearings and five continuances, and the proceedings "have moved forward with minimal delay" on the part of the Respondents. (Doc. 30

at 8).

Pursuant to 8 U.S.C. § 1226(e), the "Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and a court may not "set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." Section 1226(e) "does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez*, 872 F.3d at 987 (citation and quotation omitted). Courts have "jurisdiction to review [an immigration judge's] discretionary bond denial only where that bond denial is challenged as legally erroneous or unconstitutional." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 772–73 (N.D. Cal. 2019) (citation and quotation omitted). "[A] district court has jurisdiction to review mixed questions of law and fact, but it must be careful not to encroach upon the [immigration judge's] discretionary weighing of the evidence … Nevertheless, courts are not barred from concluding that the evidence before the [immigration judge] failed, as a matter of law, to prove the requisite showing." *Id.* (citations and quotations omitted).

As Petitioner raises constitutional claims regarding his bond denial, the Court has subject matter jurisdiction to rule on the petition.

**B.     Procedural Due Process**

1.     Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

15

"Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

## 2.    Whether Petitioner Has a Liberty Interest

On Petitioner's as-applied procedural due process challenge to his continuing detention by immigration authorities, the undersigned considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and …[(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Petitioner has an underlying, continuing liberty interest in being free from re-detention. By releasing Petitioner in their discretion following his initial encounter, immigration officials necessarily determined that Petitioner did not present a risk of flight or danger to the community.

16

Specifically, in Petitioner's form I-213, dated November 29, 2023, immigration authorities recorded that Petitioner was released on order of recognizance, approximately 11 months prior to his most recent re-detainment, and that Petitioner "does not appear to be a threat to national security, border security, or public safety."   (Doc. 9-2 at 9); *see* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Accord *Rodriguez Diaz*, 53 F.4th at 1196.  Petitioner remained released from immigration detention for a significant amount of time.

The undersigned agrees with other courts and other judges of this Court that noncitizens released from immigration custody on general orders of supervision or on their own recognizance have a liberty interest in their freedom that implicates protections under principles of procedural due process.  *See Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process."); *see id*. ("[E]ven if immigration detainees must wait months before a periodic re-review of their detention, those already released on immigration bond possess an interest in their continued liberty, which grows over time, and a due process right to a hearing before being re-detained."); *Nak Kim Chhoeun v. Marin*, 442 F. Supp. 3d 1233, 1245 (C.D. Cal. 2020).  Accord *Doe*, 787 F. Supp. 3d at 1094 (considering in connection with a petitioner's procedural due process claim that "[t]he lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty"); *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute"). *Cf. Daley v. Andrews*, No. 1:25-cv-00922-KES-CDB, 2026 WL 101840, at *9-10 (E.D. Cal. Jan. 14, 2026) (finding a petitioner mandatorily

detained pursuant to § 1226(c) did not have a protectible liberty interest because he had remained in continuous custody and never released on supervision).

Respondents argue that Petitioner is an "applicant for admission" and is "subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2)." (Doc. 30 at 1-2; citing, *inter alia*, *Alonzo v. Noem*, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025)). The petitioners' circumstances in *Alonzo* are factually dissimilar from those presented here, as another judge of this Court has explained: in contrast to the circumstances at issue in *Alonzo*, Petitioner here was detained by ICE and released, and immigration proceedings have remained pending for a significant period of time. *See Garcia v. Chesnut*, No. 1:25-cv-01907-JLT-CDB, 2025 WL 3771348, at *8 (E.D. Cal. Dec. 31, 2025) ("However, unlike here, the petitioners in *Valencia* and *Alonzo* had never been encountered, let alone processed, by immigration officials, and had not been released on recognizance pending completion of Section 240 removal proceedings.").

Additionally, other judges of this Court, as well as many other courts, have considered and rejected the government's arguments, finding that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens released following their initial encounter with immigration authorities and have resided in the United States for a significant period, like Petitioner here. *See*, *e.g.*, *H.J.G.G. v. Wofford*, No. 1:25-cv-01718-JLT-EPG-HC, 2025 WL 3761803, at *4 (E.D. Cal. Dec. 30, 2025) (citing *Castillo v. Wofford*, No. 1:25-cv-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025)); accord *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 935-37 (N.D. Cal. 2025), *appeal filed*, No. 25-7472 (9th Cir. Nov. 26, 2025). Under such circumstances, "the government cannot switch tracks" and subject Petitioner to mandatory detention now under section 1225(b)(2) "after it previously released him on his own recognizance under section 1226(a)." *Valencia Zapata*, 801 F. Supp. 3d at 936; accord *Souza v. Robbins*, No. 1:25-cv-01597-DJC-JDP, 2025 WL 3263897, at *2 (E.D. Cal. Nov. 23, 2025).

    3. <u>Whether Due Process Requires a New Bond Hearing Where the Government Bears the Burden of Proof</u>

Because Petitioner has shown he has a protected liberty interest to remain free from re-

detention based on his discretionary release by immigration authorities in November 2023, the undersigned must determine what process is due before the government may terminate that liberty interest. The following factors articulated in *Mathews* govern the Court's consideration: "[(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in immigration detention context); *id*. at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

Respondents rely on, *inter alia*, *Abdul-Samed v. Warden* (No. 1:25-cv-00098, 2025 WL 2099343 (E.D. Cal. July 25, 2025)) in arguing that the *Mathews* test does not apply because Petitioner is detained under section 1225(b)(2). (Doc. 30 at 11-14). As noted above, section 1226(a) provides the appropriate framework here and *Abdul-Samed* is readily distinguishable as the petitioner in that action was not released on recognizance following his initial encounter with immigration authorities.

As to the first *Mathews* factor, Petitioner has shown he has a significant private interest in remaining on release from detention. He had been released from immigration custody for over 10 months prior to his re-detention. During his release, Petitioner was charged in two criminal complaints, one in December 2024 concerning events that occurred two months prior, and one in June 2025, concerning events which occurred in August 2024. The former complaint was dismissed and the latter, charging a misdemeanor shoplifting offense, has remained pending for more than nine months. (Doc. 28 ¶¶ 31-32; Doc. 9-2 at 15). Respondents do not assert Petitioner was convicted of, nor pled guilty to, any crime. *See Munoz-Flores v. Chestnut*, No. 1:26-cv-01301-KES-HBK (HC), 2026 WL 457124, at *1 (E.D. Cal. Feb. 18, 2026) (noting that the "contention that an arrest, without more, constitutes evidence of criminal activity is without merit" and that respondents failed to show petitioner violated any of his release conditions where he was charged,

19

but not convicted, of driving under the influence after his release on recognizance) (citation omitted); *Singh v. Bondi*, No. C26-0598-SKV, 2026 WL 747104, at *3 (W.D. Wash. Mar. 17, 2026) ("An arrest, standing alone, is not evidence of criminal activity in breach of Petitioner's release conditions.").

Furthermore, the I-213 form dated the day of Petitioner's re-detainment (October 17, 2024), notes that no crimes were "selected for inclusion on the I-213." The form also references Petitioner's two aforementioned arrests (August 3, 2024, and October 9, 2024) but provides no discussion of these arrests in regards to any flight risk or danger to community within the "Justification Narrative" section of the form, where it is noted only that "targeting of [Petitioner] is an appropriate allocation of resources as [Petitioner] entered the United States without inspection on November 27, 2023, at Tecate, California." (Doc. 9-2 at 18-19). Nor is there any such discussion regarding these arrests anywhere else in the form. The form states that Petitioner was informed only that he was "going to be arrested for immigration violations," with no further elaboration. *Id.* at 19-20.

Thus, Respondents fail to show that Petitioner was subjected to any pre-deprivation determination of violation of release conditions. *See Reyes v. Hermosillo*, No. 2:26-cv-00270-TLF, 2026 WL 507678, at *5 (W.D. Wash. Feb. 24, 2026) ("The first *Mathews* factor weighs in [petitioner's] favor, but not as strongly as it would for an individual without any indication of materially changed circumstances as may be relevant to the assessment of dangerousness or flight risk … petitioner does not dispute she was arrested and charged with a criminal offense [for theft] in March 2024, and that these charges are still pending … Even so, as petitioner's prior release lasted from February 2022 to December 2025, she was deprived of an established liberty interest.").

As to the second factor, the risk of an erroneous deprivation of a petitioner's liberty interest is considerable where he has not received any bond or custody redetermination. *Hernandez*, 872 F.3d at 1094; *see A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). The Court acknowledges that, after Petitioner filed a request for bond redetermination, he received a bond hearing on February 27, 2025, where the immigration judge denied bond, finding that Petitioner had not met his burden to demonstrate that he was not a flight

20

risk. (Doc. 9-1 ¶¶ 17-18; Doc. 9-2 at 23; Doc. 28-1, Ex. C). This hearing was held approximately four months after his re-detainment. After Petitioner filed a second request for bond hearing, on July 30, 2025, the immigration judge issued an order noting that "[Petitioner] has not established materially changed circumstances" and that the court lacked jurisdiction over the request. (Doc. 9-2 at 54; Doc. 28-1 at 20; Doc. 28 ¶ 30). This hearing was approximately nine months after Petitioner's re-detainment.

It is clear from the language of the immigration judge's orders that, for both bond hearings, the immigration judge placed the burden of proof upon the Petitioner to show he was not a flight risk. The order following the first bond hearing provides essentially no discussion to support the immigration judge's conclusion. Additionally, in the order on the second hearing, the immigration judge notes that the court did not have jurisdiction to rule on the request. However, Petitioner was necessarily found to not be a flight risk or a danger to the community due to his release on recognizance following his initial encounter with immigration authorities. The DHS form Record of Deportable/Inadmissible Alien, dated the day of Petitioner's release (November 29, 2023), expressly records that Petitioner "does not appear to be a threat to national security, border security, or public safety," immediately before noting he was released from DHS custody on order of recognizance. (Doc. 28-1 at 6).

Thus, Petitioner was previously found to not be a flight risk or present a danger to the community. That the government made a custody determination after being apprised of Petitioner's arrests—on charges which were either dismissed or remain to be disposed and have not resulted in any conviction—without any such determination made by a neutral arbiter, is insufficient to address the risk of erroneous deprivation of Petitioner's liberty interest. As no individualized determination was then ever made by the government, the risk of Petitioner's erroneous deprivation is high. *See Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *Reyes*, 2026 WL 507678, *5 ("The second *Mathews* factor still weighs in petitioner's favor even if, as discussed above, petitioner's arrest and pending charges for a crime potentially constitute a change in material circumstances

21

after her initial release. This is because respondents have not rebutted petitioner's argument that at the time of re-detention, she was not provided an opportunity to respond to the allegations that she violated her conditions of release.").

Third, the government's interest in detaining Petitioner without a compliant bond hearing is low. *Doe*, 787 F. Supp. 3d at 1094 (citation omitted); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). "The effort and cost to provide Petitioner with [a bond hearing] is minimal[.]" *Doe*, 787 F. Supp. 3d at 1094. As noted *infra* in subpart (C), the Petitioner's prior bond hearings did not comport with applicable due process. Therefore, any additional burden from requiring the government to seek a third bond hearing does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.

In sum, the undersigned finds that, under *Mathews*, Respondents have violated Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution through his arrest in October 2024 and continuing detention thereafter.

**C.      Remedy**

The undersigned considers whether Petitioner is entitled to a pre-deprivation or post-deprivation bond hearing, and further, addresses what standards should apply at that hearing.

First, the undersigned concludes that Petitioner is entitled to a post-deprivation bond hearing. As summarized above, although Respondents assert Petitioner's two arrests purportedly violated his conditions of release, Respondents offer no credible basis to find that Petitioner may have violated such conditions as Respondents have not proffered any particulars as to any convictions. Indeed, Petitioner was arrested by ICE on October 17, 2024, only after he complied with directions to report to the ICE office. However, Petitioner's arrests occurred prior to ICE's re-detainment, including an arrest on October 9, 2024, which was approximately eight days prior to his revocation of release by ICE after Petitioner attended his hearing. (Doc. 28-1 at 13). Thus, the revocation of release based on immigration violations was "not obviously pretex[t]ual."

*Martinez Hernandez v. Andrews*, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at \*12 (E.D. Cal. Aug. 28, 2025) ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight.") (citing cases); accord *O.A.C.C. v. Wofford*, No. 1:25-cv-01652-DAD-CSK (HC), 2025 WL 3485221, at \*4-5 (E.D. Cal. Dec. 4, 2025).

Second, Petitioner was released by ICE on order of recognizance following his initial encounter and arrest in November 2023 and remained at liberty for approximately 11 months prior to his re-detention in October 2024. (Doc. 28 at 4). In releasing Petitioner, immigration officials necessarily determined that he did not present a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8). Petitioner was afforded a bond hearing where the burden was placed on him to show he was not a flight risk, and a second bond hearing where the immigration judge again found that Petitioner had not established changed circumstances, and concluded the immigration court had no jurisdiction to consider the merits of Petitioner's request. But, as noted above, the government had already determined that Petitioner was not a flight risk or a danger to the community in releasing him on his release on recognizance. As such, it is incumbent on the government to demonstrate re-detention is warranted due to changed circumstances that result in a risk of flight or a danger to the community. Instead, in his prior bond hearings, Petitioner was essentially tasked with "proving a negative," namely that he is still not a flight risk or a danger to the community. *See Ayobi v. Castro*, No. SA-19-cv-01311-OLG, 2020 WL 13411861, at \*6 (W.D. Tex. Feb. 25, 2020) ("Additionally, it is self-evident that allocating the burden of proof to the government to affirmatively justify Petitioner's continued detention—as opposed to forcing Petitioner to again prove a negative—is a reasonable approach to mitigate the risk of erroneous deprivation of his due process rights.").

Further, during the second bond hearing, the immigration judge noted that Petitioner had been released as a "favorable exercise of [DHS] discretion, and then re-detained by [DHS]." (Doc. 9-1 para. 23; *id.*, Ex. 7). However, as noted *supra*, release from detention yields to Petitioner a protected liberty interest in being free from re-detention under the Due Process Clause of the Fifth Amendment. *See, e.g., Pinchi v*, 792 F. Supp. 3d at 1032. Thus, DHS may not simply revoke its

23

"favorable exercise of discretion" and re-detain Petitioner. Rather, having previously released Petitioner on recognizance, DHS must provide due process sufficient to mitigate the risk of erroneous deprivation of Petitioner's due process rights. The record before the Court does not evidence Respondents' provision to Petitioner of sufficient due process in light of the circumstances.

In short, Petitioner's prior bond hearings by an immigration judge failed to comport with due process requirements. First, they took place following the passage of a significant amount of time after Petitioner's re-detention. Second, the immigration judge erroneously shifted the burden to Petitioner to establish changed circumstances. *See Shilu v. Warden, Otay Mesa Det. Ctr.*, No. 3:26-cv-01275-RBM-BJW, 2026 WL 926900, at *2 (S.D. Cal. Apr. 3, 2026) (granting release and a bond hearing with respondents bearing burden, by clear and convincing evidence, that petitioner poses a danger or risk of flight, and noting "Respondents do not dispute that Petitioner was not provided with an individualized determination or an opportunity to be heard before being re-detained. Instead, Respondents acknowledge that Petitioner was denied bond at a bond hearing because the Immigration Judge determined that the court lacked jurisdiction pursuant to *Matter of Q. Li …*").

Under these circumstances, notwithstanding that Petitioner incurred two arrests during his period of release, because arrest neither has resulted in any criminal conviction, the Courts finds that the government should bear the burden of establishing at a new bond hearing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community. *E.g.*, *Singh v. Andrews*, No. 1:25-cv-01543-DCJ-SCR, 2025 WL 3248059, at *6 (E.D. Cal. Nov. 19, 2025) (requiring government to carry burden by clear and convincing evidence, notwithstanding disputed issues of facts involving the petitioner's alleged violation of release conditions); *M.V.I. v. Andrews*, No. 1:25-cv-01440-JLT-SKO, 2025 WL 3154403, at *13-14 (E.D. Cal. Nov. 112, 2025) (same). "Doing so is logical" because "the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *M.R.R. v. Chestnut*, No. 1:25-cv-

24

01517-JLT-SKO, 2025 WL 3265446, at *14 (E.D. Cal. Nov. 24, 2025) (relying on *Pinchi*, 792 F. Supp. 3d at 1034, 1038); accord *Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *8-9 (E.D. Cal. Nov. 22, 2025).

### D.    Respondents' Reference to Ninth Circuit Appeals

Respondents assert that there are matters pending appeal before the Ninth Circuit that bear on the issues presented in this case. (Doc. 30 at 1 n.1; citing, *inter alia*, *Rodriguez v. Bostock*, No. 25-6842). Having found that Petitioner's re-arrest without a constitutionally compliant bond hearing and continuous detention for a considerable length of time violates the U.S. Constitution, the undersigned will not hold the matter in abeyance pending said appeals. *See Zadvydas*, 533 U.S. at 690 (reaffirming that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.")

## V.    Conclusion and Order

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus (Doc. 1) is GRANTED in part.

1. Respondents are ORDERED to provide Petitioner (A-Number 245 519 793) with a bond hearing in accordance with 8 U.S.C. § 1226(a) within 14 days of the date of this Order, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified.

2. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Respondents SHALL release Petitioner from custody immediately and forbear from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven (7) days in advance and holds a bond hearing consistent with this order;

3. Respondents SHALL file a status report within 21 days of the date of this Order setting forth either the results of the bond hearing ordered herein or the status of Petitioner's custody; and

25

4.  The Clerk of the Court is DIRECTED to serve a copy of this order at the following address, and to then enter judgment for Petitioner and close this case:

> Golden State Annex (A-Number 245 519 793)
> 611 Frontage Road
> McFarland, CA 93250

IT IS SO ORDERED.

Dated:    **April 20, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

26