UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE (A-Number: 245-519-793), Petitioner, v. WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*, Respondents. | Case No. 1:25-cv-01283-CDB (HC) ORDER DENYING PETITIONER'S MOTION TO ENFORCE JUDGMENT AND DENYING AS MOOT PETITIONER'S MOTION TO SHORTEN TIME FOR HEARING (Docs. 51, 53) |

Pending before the Court is Petitioner John Doe's motion to enforce the Court's order granting in part the petition for writ of habeas corpus (Doc. 51) and his motion to shorten time for hearing on the motion to enforce (Doc. 53).

## I. Relevant Background[1]

Petitioner John Doe, a federal immigration detainee proceeding under pseudonym (*see* Doc. 29), initiated this action on September 29, 2025, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). Petitioner is in custody the of U.S. Immigration and Customs Enforcement ("ICE") at the Golden State Annex facility. *Id.* ¶ 1.

On April 20, 2026, the Court granted in part the petition for writ of habeas corpus. (Doc.

[1] The Court adopts and incorporates the factual background summarized in the April 20, 2026, order granting in part the petition for writ of habeas corpus. *See* (Doc. 38 at 2-6).

38). Judgment was entered that same day. (Doc. 39). In its order, the Court directed Respondents to provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a), at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified. (Doc. 38 at 25).

In his motion, Petitioner asserts that the immigration judge ("IJ") Katie G. Mullins conducted a custody redetermination hearing on April 24, 2026, where the IJ admitted evidence, took arguments from the parties, and stated she was exercising her discretion not to hear witness testimony. (Doc. 51 at 8; citing Exhibit ("Ex.") A, Transcript of Bond Proceedings). The IJ issued an oral decision stating that the government had shown, by clear and convincing evidence, that Petitioner is both a danger to the community and a significant flight risk, such that no combination of release conditions could adequately mitigate such risk. The IJ issued a written decision that same day. *Id.* (citing Ex. B, Order of the IJ).[2]

## II. <u>Governing Authority</u>

"When a district court issues a conditional habeas writ, it retains jurisdiction to determine compliance." *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020); *e.g.*, *Loba L.M. v. Andrews*, No. 1:25-cv-00611-JLT-SAB, 2026 WL 710307, at *5 (E.D. Cal. Mar. 13, 2026) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011)). This includes the authority to review the IJ's decision for an abuse of discretion and to evaluate whether the standard imposed by the Court's prior order was properly applied at the bond hearing. *Martinez v. Clark*, 124 F.4th 775, 784–85 (9th Cir. 2024) (holding that district courts have habeas jurisdiction to review whether an IJ "erred by applying the wrong burden of proof"); *e.g., Kumar v. Noem*, No. 1:26-cv-01148-DJC-AC, 2026 WL 983129, at *2 (E.D. Cal. Apr. 13, 2026) ("[T]he Court's analysis [on a motion to enforce judgment] is grounded in the legal standard for reviewing IJ detention determinations."). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but instead determining whether the IJ "applied the correct legal standard." *See Martinez*, 124 F.4th at 785 (citation omitted).

---

[2] Petitioner has applied to seal Exhibit A and Exhibit B in their entirety. (Doc. 52). The Court will address by separate order its ruling on Petitioner's application.

"Generally, in the absence of any red flags," the Court will credit an IJ's statement that she applied the correct burden of proof. *Id.* "But when there is an indication that something is amiss," the Court will "not credit [the] use of a 'catchall phrase' to the contrary." *Id.* "[T]he Court's review is effectively limited to whether the [immigration judge's] decision reflects clear legal error or is unsupported by sufficient evidence." *Kumar*, 2026 WL 983129, at *2 (citations omitted); *see Benipal v. Rokosky*, No. CV 26-01306 PHX RM (CDB), 2026 WL 1355010, at *9 (D. Ariz. Apr. 24, 2026), *report and recommendation adopted*, No. CV-26-01306-PHX-RM, 2026 WL 1352061 (D. Ariz. May 14, 2026) ("[T]he issue is whether the IJ relied upon proof that—as a matter of law—could not establish that conclusion.").

## III. **Discussion**

### A. Exhaustion

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered.… Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* at 998 (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

The Court finds that the prudential exhaustion requirement should be waived for the limited purpose of determining whether the IJ complied with the Court's April 20, 2026, order granting Petitioner's petition in part and ordering Respondents to hold a bond hearing and detaining

Petitioner only if Respondents meet their burden to demonstrate that Petitioner is a flight risk or danger to the community by clear and convincing evidence. *See* (Doc. 38); *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) ("[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'") (quoting *Laing*, 370 F.3d at 1000).

**B. Motion to Enforce**

In his motion to enforce, Petitioner contends that the IJ failed to hold the government to the applicable evidentiary burden, that the IJ placed the burden on the Petitioner instead, and that the evidence does not meet the government's burden. (Doc. 51 at 14-23).

"To determine whether a [noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez*, 124 F.4th at 783 (citing *Matter of Guerra*, 24 I. & N. Dec. 37 (Sept. 28, 2006)). "The nine factors an IJ 'may' consider 'include any or all of the following:' (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States." *Id.*

1. <u>Danger to the Community</u>

*a. The IJ's Decision*

In her order, the IJ denied bond to Petitioner because "the Department has proven by clear and convincing evidence that Respondent is both a danger and such a significant flight risk that no amount or combination of release conditions can sufficiently mitigate that risk." (Doc. 51, Ex. B

at 13[3]). As to danger, the IJ found that Petitioner's arrest on suspicion of shoplifting, within approximately eight months of entering the United States, and on suspicion of felony access of account information without the owner's consent, a few months later, were not necessarily indicative of violence. Nevertheless, the IJ observed that the local district attorney's office filed criminal charges against Petitioner, that the case was pending as of the date of the bond hearing, and that correspondence from Petitioner's defense counsel reflected a goal to seek sentencing mitigation and not a finding of factual innocence. The IJ further noted that the record reflected Petitioner had repeatedly engaged in violent behavior while presently detained. The IJ listed the following events: 1) placement in administrative segregation on or about September 15, 2025, due to fighting or horseplay that could cause injury to another person; 2) disciplinary punishment due to taking a television remote control from other detainees and challenging them to come take it, with documentation noting that Petitioner had been in a fight in "every dorm on B-side"; 3) an incident on June 30, 2025, where Petitioner "ignored orders" of staff to deescalate an argument during a soccer game, which resulted in a punches being thrown and a fight between Petitioner and another detainee. *Id.* at 14.

*b. Petitioner's Contentions*

Petitioner asserts that the government "did not submit evidence to establish that Petitioner has been convicted of a crime," noting that the government submitted "Petitioner's FBI RAP sheet, a Glendale Police Department citation from October 9, 2024, and four notices from GEO Security Services." Petitioner provides that his counsel submitted evidence that Petitioner had not been convicted of a crime, including an email from Petitioner's criminal defense attorney establishing that the case regarding his August 3, 2024, arrest was pending, and documents establishing that the case regarding his October 9, 2024, arrest was dismissed on November 6, 2025. (Doc. 51 at 14-15). Petitioner asserts that, by requiring Petitioner to "submit evidence of factual innocence, the IJ demonstrated that she was not actually placing the burden on the government." *Id.* at 16.

Petitioner further argues that the GEO reports do not "clearly involve dangerous conduct."

[3] The Court will refer to the pagination as printed on the bottom middle of each page of the exhibits.

Petitioner contends that the characterizations made by the IJ in her decision do not align with the GEO reports. Petitioner asserts that, even if credited, such reports "should be given similar weight as police reports, because they contain the same indicia of unreliability," and thus the government cannot meet its evidentiary burden by relying on the GEO reports. *Id.* at 16-19. Petitioner notes that the GEO report regarding Petitioner's placement in administrative segregation on September 15, 2025, does not contain details nor any description of the incident. *Id.* at 17 (citing Ex. C, Government's Exhibits at Bond hearing).[4] Petitioner also observes that the GEO report regarding the incident on August 5, 2025, does not present evidence of use of force when Petitioner took the remote control, as the language in the report is that "[h]e took the remote and challenged the Indians to come take it"; Petitioner also contends that the report lacks any description of Petitioner instigating or engaging in violent behavior in the CCTV footage cited therein. Petitioner argues that no further evidence in the GEO report supports the finding that Petitioner has "been in a fight in every dorm on B-side," and the IJ took particular note of this fact as she wrote it in all capital letters in her decision. *Id.* at 17-18 (citing Exs. B, C). As to the incident on June 30, 2025, Petitioner asserts that the associated GEO report states that Petitioner and another detainee "began to push each other, then they both began to swing their fists at each other," and that no injuries were caused and the matter was reduced to a warning. *Id.* at 18 (citing Exs. B, C).

*c. Analysis*

Upon review of the exhibits, including those attached to the IJ's decision, the Court finds Petitioner's contentions regarding the IJ's treatment of GEO reports to be without merit. First, though the IJ in fact capitalizes the text "[RESPONDENT] HAS CURRENTLY BEEN IN A FIGHT IN EVERY DORM ON B-SIDE" in her decision, a review of the relevant GEO report reflects that said text was capitalized in the report itself. *See* (Doc. 51, Ex. C at 54; alteration in original). It is reasonable to conclude that the IJ merely reproduced the text as it appeared in the report without alteration and, accordingly, does not (as Petitioner contends) *per se* evidence the IJ's emphasis of this fact. Second, Petitioner correctly characterizes the GEO report dated September

[4] Petitioner has applied to seal Exhibit C in its entirety. (Doc. 52). The Court will address by separate order its ruling on Petitioner's application.

15, 2025, as referring to a pending investigation for a rules violation, listed as a code 201, "[f]ighting or horseplay that could cause injury to another person." It is signed and dated September 15, 2025. *Id.* at 47. Third, the GEO report relating to the August 5, 2025, incident is consistent with the IJ's description of the record, as do the attached supplemental incident reports. *Id.* at 53-56, 63-64. Fourth, the Court finds that, similarly, the GEO report relating to the June 30, 2025, incident generally supports the IJ's characterization in her decision. *Id.* at 69-74.

As the record does not show a clear mischaracterization of the evidence or a misrepresentation of the facts, the Court does not reweigh the evidence. *Martinez*, 124 F.4th at 785. Thus, the Court will not reach Petitioner's argument regarding weighing of GEO reports akin to police reports. *See C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2026 WL 241823, at *8 (E.D. Cal. Jan. 29, 2026) (acknowledging "ambiguity" in disputed evidence but finding the IJ's interpretation did not rise to the level of "clear mischaracterization or misrepresentation of the facts" and, as such, that "the Court lacks the ability to 'second-guess the immigration judge's weighing of the evidence.'") (quoting *Calmo v. Sessions*, No. C 17-07124 WHA, 2018 WL 2938628, at *4 (N.D. Cal. June 12, 2018)); *Singh v. Warden*, No. 1:26-cv-02303-JLT-SKO, 2026 WL 1759594, at *4 (E.D. Cal. June 18, 2026) ("To the extent that Petitioner argues that the IJ placed too little weight on the evidence of Petitioner's sponsor and letters of support, the Court lacks the ability to 'second-guess the immigration judge's weighing of the evidence.'") (citing *Calmo*, 2018 WL 2938628, at *4); *Rodriguez v. Warden*, No. 1:26-cv-03001-JLT-SAB, 2026 WL 2137748, at *2 (E.D. Cal. July 24, 2026) ("Complaints about application of BIA case law to Petitioner and IJ's weighing of factors must be presented through the normal immigration appeal process.").

The record before the Court shows that the IJ applied the appropriate standard, that of clear and convincing evidence, in her findings regarding Petitioner's danger to the community and properly placed the burden upon the government. Stated otherwise, the IJ did not violate the Court's orders or applicable due process in finding Petitioner a danger. *See Fajardo-Cordova v. McGregor*, No. CV-26-00585, 2026 WL 788801, at *1 (D. Ariz. Mar. 3, 2026) ("But based on the current record, the Court cannot conclude that the legal framework employed by the Immigration

Judge was itself a violation of due process."); *Gatica v. Cruz*, No. 1:26-cv-00922-JLT-CDB, 2026 WL 1459800, at *2 (E.D. Cal. May 25, 2026) ("The IJ provided a detailed and well-reasoned analysis in her written decision denying bond, cited appropriate case law, and provided both Petitioner and the Government an opportunity to provide evidence and make arguments at the bond hearing."); *cf. Singh v. Warden*, No. 1:26-cv-01973-DAD-CSK, 2026 WL 1328588, at *8 (E.D. Cal. May 13, 2026) (noting that "the immigration judge's written decision did not include any citation to evidence or reasoning to support the denial of bond," and finding that, "in light of the entirely conclusory treatment of the evidence reflected in the immigration judge's order and the immigration judge's repeated statement of disagreement with this court's order, the immigration judge paid mere 'lip service' to this court's order by reciting the appropriate legal standard but not actually applying that standard").

2. <u>Risk of Flight</u>

The IJ also concluded the government established by clear and convincing evidence that Petitioner is "such a significant flight risk that no amount or combination of release conditions are sufficient to mitigate that risk[.]" (Doc. 51, Ex. B at 14-15).

The Court need not consider the IJ's findings with respect to flight risk in order to uphold the detention order because, here, the Court finds that the IJ did not abuse her discretion in properly finding that Petitioner is a danger to the community based on clear and convincing evidence. *See* (Doc. 51, Ex. B). *Cf. Singh*, 2026 WL 1328588, at *6 (citing cases and noting that "many district courts have recently concluded that an immigration judge abuses their discretion when they deny release on bond without any explanation of their reasoning in doing so").

Thus, even if the Court were to credit Petitioner's arguments and find that the IJ erred in her determination regarding risk of flight, Petitioner's present detention and the denial of bond is permissible based on the IJ permissibly finding Petitioner a danger to the community.

3. <u>Petitioner's Remaining Arguments</u>

Petitioner advances arguments relating to purported institutional changes that have occurred within the immigration court system. Among other things, Petitioner asserts that the current administration has "fired nearly 100 experienced immigration judges," purged members of the

Board of Immigration Appeals, replaced removed judges with individuals aligned with the administration's policy agenda, and issued policy memoranda favoring the government. (Doc. 51 at 24-29). Petitioner attaches to his motion papers articles from news websites and legal research papers (*see id.*) and the declaration of Zabdi J. Salazar regarding Adelanto Immigration Court bond outcomes and bond amounts (*see* Doc. 57-1). Mr. Salazar attests to certain statistics purported to relate to the Adelanto Immigration Court, and highlights text therein purported to set forth denial rates of individual IJs. *See id.* at 15. In his reply, Petitioner contends that this data purports to indicate bias as to IJ Mullins, namely due to purported increases in denial rates after November 10, 2025. *See* (Doc. 57 at 5).

Even if the Court were to consider Petitioner's improper reply evidence (*see* Local Rule 230(m)), Petitioner has not presented any evidence of bias on the part of the IJ in the proceedings herein. Because these arguments do not relate to how the IJ who presided over Petitioner's bond hearing was biased as to Petitioner, but rather purport to indicate generalized trends, the Court declines to address them. *See O.A.C.S. v. Wofford*, No. 1:25-cv-01652-DAD-CSK, 2026 WL 1816122, at *2 n.3 (E.D. Cal. June 24, 2026) ("Even were this novel argument properly before the court on a motion to enforce judgment, petitioner's argument does not address how the immigration judge who presided at the bond hearing was biased, instead arguing only that the entire immigration system is so fundamentally biased that no bond hearing would be fair. The court declines to address this argument."); *Fernandes v. Warden*, No. 2:26-cv-00430-DAD-EFB (HC), 2026 WL 1959397, at *2 (E.D. Cal. July 7, 2026) ("Finally, though petitioner argues that the current Administration's policy and statistical evidence indicate that IJ's in general no longer serve as impartial adjudicators, petitioner has not presented any evidence on the part of the IJ in this proceeding. Accordingly, the court declines to address this argument.") (citing *O.A.C.S.*, 2026 WL 1816122, at *2 n.3).

* * * * *

In sum, the Court finds that Respondents complied with the Court's order as Petitioner was provided a bond hearing at which the IJ properly found that Petitioner is a danger to the community based on clear and convincing evidence such that bond permissibly was denied.

///

## IV. Conclusion and Order

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's motion to enforce judgment (Doc. 51) is DENIED; and
2. Petitioner's motion to shorten time for hearing (Doc. 53) is DENIED as moot.

IT IS SO ORDERED.

Dated: **August 7, 2026**

UNITED STATES MAGISTRATE JUDGE